# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KEVIN M. SCOTT, # R-21871,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| vs. | ) | Case No. 18-cv-1345-SMY |
| | ) | |
| **WARDEN, GRAHAM CORRECTIONAL CENTER,** | ) ) | |
| | ) | |
| **Respondent.** | ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on Respondent's Motion to Dismiss the habeas corpus Petition as untimely. (Doc. 7). Petitioner Kevin M. Scott, a state prisoner currently incarcerated at Graham Correctional Center, filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his 2008 Madison County, Illinois conviction for murder and kidnapping on the basis of ineffective assistance of counsel. (Doc. 1).

Scott's response to the Motion to Dismiss raises the question of whether he is entitled to equitable tolling of the one-year filing deadline for his Petition. (Doc. 9, pp. 1, 3, 6, 10). In an Order issued on February 1, 2019 (Doc. 10), the Court determined that Scott's Petition was filed beyond the one-year time limit set forth in 28 U.S.C. § 2244(d)(1). However, the Court reserved ruling on the Motion to Dismiss and ordered Scott to supplement his response with documentation supporting his claims that his limited access to the law library during lockdowns and/or his mental impairment support equitable tolling in this case. (Doc. 10).

Scott has submitted supplemental responses to the Motion (Docs. 22 and 26). Additionally, Respondent has provided lockdown records from Scott's confinement at Menard

1

Correctional Center (Doc. 16). Based on a thorough review of this information, the Motion to Dismiss the Petition as untimely will be granted.

## Relevant Facts

Scott is serving consecutive sentences of 34 years for first degree murder and 7 years for kidnapping, imposed after a bench trial in Madison County, Illinois Case Number 07-CF-541. The victim was beaten three times by three or four people. Scott was identified as having participated in the beatings and in transporting the victim from Alton, Illinois, to Wellston, Missouri against his will. (Doc. 1, pp. 30-37; Doc. 7, p. 1). The victim's body was found in Wellston.[1]

Scott was sentenced on December 16, 2008, and his conviction and sentences were affirmed on direct appeal on August 12, 2011. (Doc. 7-1). Scott's Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court was denied on November 30, 2011. *People v. Scott*, No. 113166, 962 N.E.2d 487 (Ill. 2011) (Table).

Scott filed a post-conviction petition on August 14, 2012. (Doc. 7-3, p. 25). The trial court denied relief, and the Illinois Appellate Court affirmed. (Doc. 1, p. 19). The Illinois Supreme Court denied Scott's PLA on November 22, 2017, and the Supreme Court denied certiorari on June 4, 2018. (Doc. 1, pp. 29, 61).

Scott filed the instant Habeas Petition on June 24, 2018. (Doc. 1, p. 18). It was docketed by the Clerk of Court on July 2, 2018, but under the prison mailbox rule, the Petition was considered filed as of the date Scott placed it in the prison mailing system. *See Houston v. Lack*, 487 U.S. 266 (1988); *Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001).

---

[1] In light of the timeliness issue raised in the Motion, it is not necessary to recite in detail the facts underlying Scott's conviction.

## Applicable Legal Standards

28 U.S.C. § 2244 creates a one-year limitation period for filing a Petition for Writ of Habeas Corpus. Specifically, under 28 U.S.C. § 2244(d)(1), a person convicted in state court must file his federal habeas petition within one year of the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The one-year statute of limitations is tolled during the pendency of a "properly filed" state post-conviction petition. 28 U.S.C. § 2244(d)(2). The one-year statute of limitations is also "subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling applies only where the petitioner shows both "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

## Analysis

The Court previously concluded that Section 2244(d)(1)(A) applies to Scott's case and that Scott's conviction became final on February 28, 2012 – 90 days after the Illinois Supreme Court's denial of his PLA on direct appeal. (Doc. 10, p. 3). *See Anderson v. Litscher*, 281 F.3d 672, 674-75 (7th Cir. 2002) (if certiorari is not sought, judgment of conviction becomes final at

3

the end of the 90-day period during which certiorari petition could have been filed). Thus, by the time Scott filed his state post-conviction petition on August 14, 2012, 167 days of his one-year period had run since February 28, 2012. The limitations period was then suspended while Scott's post-conviction petition remained pending. 28 U.S.C. § 2244(d)(2).[2]

Over five years later, Scott's habeas clock began to run again on the date the Illinois Supreme Court denied his post-conviction PLA (November 22, 2017). Therefore, his habeas filing period expired on June 8, 2018, when the remaining 198 days elapsed. (Doc. 7, p. 3). The fact that Scott sought a writ of certiorari from the Supreme Court after the Illinois Supreme Court denied the post-conviction PLA did not extend the tolling of his habeas deadline. *Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (application for state post-conviction review is no longer "pending" once the state court issues its final order). Scott's Petition in the instant case, filed on June 24, 2018, was therefore untimely, having been filed 16 days past Scott's June 8, 2018, deadline.

The late filing of Scott's Petition may be excused if he is eligible for equitable tolling. However, equitable tolling is "an extraordinary remedy that is 'rarely granted.'" *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013) (quoting *Simms v. Acevedo*, 595 F.3d 774, 781 (7th Cir. 2010)). In order for equitable tolling to apply, a habeas petitioner must demonstrate diligent pursuit of his rights **and** identify some extraordinary circumstance that prevented him from timely filing his Petition (emphasis added). *Holland v. Florida*, 560 U.S. 631, 649 (2010). Here, Scott asserts he was unaware of the time limits for filing his habeas challenge (Doc. 9, p. 1), but this will not excuse a late filing. He further asserts that he was "locked down in Menard C.C. and was unable to do legal work, do [sic] to the length of the lockdowns." *Id.* Finally, Scott

---

[2] Section 2244(d)(2) states: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

4

notes that "mental incompetence can satisfy the standard for tolling" and states that he has had "comprehensive disability all of his life from childhood into adult." (Doc. 9, pp. 3, 5).

**Lockdowns/Access to Law Library and Legal Materials**

According to Respondent, Scott was housed at Menard from January 21, 2009, until December 5, 2016 (Doc. 16, p. 2), which encompasses the initial 167 days when Scott's habeas filing period was running in 2012. The Menard lockdown records show that some or all sectors of the prison[3] were on either "Level 1" or "Level 4" lockdown for up to 100 days out of the 167 days of Scott's habeas filing period. (Doc. 16-1, pp. 1-2; Doc. 22, p. 3). According to Scott, a "Level 1" lockdown means no movement is allowed, and a "Level 4" lockdown allows for "limited movement." Level 1 would therefore result in no access to the law library – but Scott does not explain whether any law library access would have been allowed during the Level 4 lockdowns. (Doc. 22, p. 2). Further, Scott does not indicate whether he sought or was given permission to access the law library between February 28, 2012 and August 14, 2012 during times when his cellblock was *not* on lockdown. The Court notes, however, that Scott was evidently able to perform some legal work during that time, because he filed his state post-conviction petition on August 14, 2012 (which suspended the running of his federal habeas filing deadline). Scott remained at Menard for over four more years during the period while his habeas deadline was tolled.

Scott claims that he faced other obstacles after he left Menard in December 2016. He was first transferred to Pinckneyville Correctional Center, where he was housed from December

---

[3] Scott does not say where in Menard his cell was located, and the lockdown records reflect that not all sectors of the prison were affected equally by the lockdowns. For example, when the prison went on Level 1 lockdown on February 24, 2012, sectors "SU/SL/NI/NII" were stepped down to Level 4 on March 5, 2012, and the lockdown was lifted on March 7, 2012. However, sectors "ECH/WCH" did not go to Level 4 until March 8, 2012, and did not come off lockdown until March 13, 2012. (Doc. 16-1, p. 1).

5, 2016 to February 15, 2017.[4] (Doc. 22, p. 1). He was then sent to Stateville Correctional Center, where he stayed for less than a month, from February 15, 2017 to March 7, 2017. *Id.* On March 7, 2017, he was transferred to Western Illinois Correctional Center ("Western"), where he remained through the date he filed the instant action. *Id.* He claims that he was unable to obtain all of his personal legal documents or to access a law library during these multiple transfers, that only one legal box that contained half of his legal work was sent with him, and that he sought help from his counselors at Pinckneyville and Stateville to obtain the missing legal property. *Id.*

Scott does not say when he recovered the rest of his legal documents, but he also does not claim that they were never returned to him. *Id.* The Court therefore presumes that Scott did receive his legal property at some point between his transfer to Western on March 7, 2017 and June 24, 2018, the day he completed and filed the instant habeas Petition. Additionally, Scott does not claim that he experienced any hindrance to his ability to access the law library during the time he was housed at Western. As noted above, Scott's habeas filing deadline was still suspended when he arrived at Western. His habeas clock began to run again on November 22, 2017, more than seven months after his arrival at Western, and then expired 198 days later on June 8, 2018.

The Menard lockdown documentation supports Scott's claim that his law library access was significantly curtailed during the initial 167 days of his one-year filing window. However, the remaining 198 days elapsed while he was at Western in 2017-2018, and he has presented no facts to suggest that he was unable to access the law library or legal documents needed to prepare his Habeas Petition during that period. Moreover, it appears that Scott could have worked on his habeas case during at least part of the period from March-November 2017 at Western while his

---

[4] Scott gives this date as "February 15, 2016," but it is apparent from the context that he must have meant to say 2017, as his transfer to Pinckneyville only happened in December 2016.

habeas deadline was still suspended. As such, Scott has not demonstrated that the limited access to the law library and his legal documents amounted to an "extraordinary circumstance" that prevented him from timely filing his habeas Petition. *See Gray v. Zatecky*, 865 F.3d 909, 912-13 (7th Cir. 2017) (habeas petitioner was not entitled to equitable tolling based on a 113-day delay in obtaining case records and limited access to law library, where he still had 43 days to file his federal petition after receiving his case files; and distinguishing *Socha v. Boughton*, 763 F.3d 674 (7th Cir. 2014), where petitioner was deprived of all access to his legal documents for 90 percent of his one-year habeas filing period).

**Mental Impairment**

Mental incompetence or illness may, in some cases, provide grounds for equitable tolling. *See Davis v. Humphreys*, 747 F.3d 497 498-99, (7th Cir. 2014). The *Davis* court noted that a person with limited intelligence may be entitled to tolling of the habeas deadline, but "[i]t is improper to leap from one IQ test to a conclusion that a particular person is unable to understand and protect his own legal interests." *Davis*, 747 F.3d at 500. The Seventh Circuit has also found that "mental illness tolls a statute of limitations only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Obriecht v. Foster*, 727 F.3d 744, 750-51 (7th Cir. 2013.

Scott's documentation from the Social Security Administration ("SSA") shows that he received Supplemental Security Income ("SSI") benefits because of his disability from January 1990 to June 1998. (Doc. 9, p. 10). In response to the Court's Order for Scott to provide more information on the nature of his claimed mental impairment, he submitted 26 pages of elementary school records, which had been solicited in September 2006 by the State of Missouri Department of Elementary and Secondary Education, Section of Disability Determinations, in

order to develop Scott's disability claim. (Doc. 26, p. 1). According to these documents, Scott was 10 years of age in January 1990 when his SSI benefits began, and the benefits ended when he was age 18. The records consist of Scott's IEP (Individualized Education Program) plan and evaluations from 1992, 1994, and 1995. (Doc. 26, p. 2). In the summary from a conference dated October 6, 1992, when Scott was a 12-year-old 6th grade student, he was diagnosed with "a learning disability in the areas of basic reading skill, reading comprehension, written expression, mathematics calculation, mathematics reasoning, and listening comprehension." (Doc. 26, p. 7; *see also* pp. 6, 19-23). His intellectual functioning was "within the low average range." (Doc. 26, p. 7). As a result, Scott was provided with special education services. (Doc. 26, pp. 8, 12-15, 18).

Significantly, Scott did not provide the Court with any more recent documentation that might shed light on any impairments he might have suffered after he left school, particularly during the period when he was attempting to prepare his habeas corpus Petition (2012-2018). Nor does he indicate whether he was found to be disabled or received any benefits from the SSA on account of a disability after 1998. The most that he showed is that he had a learning disability and was provided with special education services during his middle school and high school years – but it is unclear whether or how that learning disability might have continued to present him with challenges during the time frame relevant to this action. The IEP documentation stated that Scott was in the "low average range of intelligence," and was "functioning in the lower third of his class[.]" (Doc. 26, p. 6). These descriptions apply to many individuals and do not, in themselves, lead to the conclusion that a person is unable to understand his rights or act to protect his interests. This is not to say that habeas corpus filing requirements are simple to understand. Nevertheless, the *Davis* court rejected the proposition that "anyone whose [mental]

shortcomings play a causal role in a delayed filing is entitled to tolling." *Davis v. Humphreys*, 747 F.3d 497, 499 (7th Cir. 2014). The court reasoned:

> If that were the law, . . . then almost everyone who failed to meet a statutory deadline would be entitled to tolling, and statutes of limitations would be eviscerated. Most people who file too late do so because they don't realize that they have potentially sound legal claims or do not know what deadline applies to those claims. Many persons of normal intellect are unable to cope with the legal system.

*Davis*, 747 F.3d at 499.

## Conclusion

For the foregoing reasons, the Court concludes that Scott has not met his burden to justify equitable tolling of the habeas filing deadline. Accordingly, Respondent's Motion to Dismiss (Doc. 7) is **GRANTED** and this action is **DISMISSED with prejudice**.

## Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In order for a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Where a petition is dismissed on procedural grounds without reaching the underlying constitutional issue, the petitioner must show both that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, no reasonable jurist would find it debatable whether this Court's ruling on the untimeliness of the Petition is correct. Likewise, reasonable jurists would not find this Court's conclusion on equitable tolling to be debatable. Accordingly, the Court denies a certificate of appealability.

Scott may reapply for a certificate of appealability to the United States Court of Appeals, Seventh Circuit. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1).

## DISPOSITION

Respondent's Motion to Dismiss the habeas corpus Petition as time-barred (Doc. 7) is **GRANTED**. This action is **DISMISSED WITH PREJUDICE.**

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

If Scott wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Scott plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Scott does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a

Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

**IT IS SO ORDERED.**

**DATED: September 19, 2019**

*s/ Staci M. Yandle*
**STACI M. YANDLE
United States District Judge**